UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRICIA A. MORIATES,

                     Plaintiff,

        -against-

NEW YORK STATE UNIFIED COURT SYSTEM,
THOMAS A. ADAMS, as Administrative Judge
Supreme Court of the State of New York – Mineola,
10th Judicial District; ROBERT A. BRUNO, as Judge,
Supreme Court of the State of New York – Mineola,
10th Judicial District, DIANE TOSCANO,
as Courtroom Clerk, Supreme Court of the State of
New York – Mineola, 10th Judicial District; and
KATHRYN DRISCOLL HOPKINS, as Chief Clerk,
Supreme Court of the State of New York – Mineola,
10th Judicial District,

                     Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 17-4576 (GRB)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Gary R. Brown, is Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Proceeding pro se, Plaintiff opposes the motion. For the following reasons, this Court respectfully recommends that Defendants' motion be granted in its entirety.

## BACKGROUND

      The relevant facts, as set forth below, are taken from those portions of the parties' Local Civil Rule 56.1 statements upon which they agree – which are few – as well as the documents offered by the parties in support of and in opposition to the within motions.

      Pro se Plaintiff, Tricia Moriates ("Moriates" or "Plaintiff"), was hired as a Principal Law Clerk by Defendant Robert Bruno ("Bruno"), a New York State Supreme Court Judge – now deceased – in 2010. (Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶ 7.) At the time Plaintiff

1

was hired, she had two young children, ages two and four. (Id. ¶ 13.) Bruno accommodated Plaintiff's schedule by allowing her to come in late, leave early, and to bring her children to work with her when she faced childcare issues. (Id. ¶ 14.) Shortly after being hired, on March 9, 2011, Plaintiff acknowledged receipt of the Employee Handbook and the Unified Court System ("UCS") "Bias-Free Workplace Policy," wherein she was advised of the right to file a complaint of discrimination or retaliation." (Id. ¶ 9.)

During her tenure as Bruno's Principal Law Clerk, Plaintiff applied for and received approval to take unpaid maternity leave, pursuant to the Family Medical Leave Act ("FMLA"), from May 4, 2016 through September 12, 2016, with an anticipated return to work date of September 13, 2016. (Id. ¶ 54.) Bruno sought permission to hire a temporary law clerk during Plaintiff's absence, which was approved, and Rachel Zampino ("Zampino") was hired as Plaintiff's temporary replacement. (Id. ¶¶ 59-60.) On August 3, 2016, Bruno emailed Paul Lamanna ("Lamanna"), the District Executive, and inquired about obtaining an extension of the August 24, 2016 deadline for Zampino's employment. (Id. ¶ 65.) Bruno's request was approved on August 30, 2016. (Id. ¶ 68.)

Once Plaintiff began her maternity leave in May 2016, there was no communication with Bruno until September 2016 when she texted Bruno to advise him that she planned to continue her leave until October 1, 2016. (Id. ¶ 71.) Plaintiff's decision to extend her maternity leave was made without any input from or discussion with Bruno. (Id. ¶ 72.) In response, Bruno advised Plaintiff that he planned to retain Zampino as his Principal Law Clerk instead of Plaintiff. (Id. ¶ 74.)

On September 1, 2016, Bruno emailed Lamanna and advised him of his decision to replace Plaintiff with Zampino. (Id.) Plaintiff's employment was terminated effective September

2

12, 2016 – the date of the expiration of her maternity leave. (Id. ¶ 79.) On or about November 4, 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation for rebuffing Bruno's sexual advances towards her. (Id. ¶ 86.)

In response to Plaintiff's EEOC complaint, the UCS Managing Inspector General for Bias Matters ("IG") conducted an investigation into Plaintiff's claims of sexual harassment and pregnancy discrimination. (Id. ¶ 88.) During its investigation, the IG interviewed Plaintiff, Lamanna, Marie Meister – Bruno's secretary – and Bruno. (Id. ¶ 89.) No action was taken against Bruno as a result of the investigation. (Id. ¶ 91.) Bruno remained on the bench until his death on November 1, 2019. (Id. ¶ 94.)

Plaintiff commenced the within action through counsel on August 4, 2017. On December 24, 2021, Plaintiff's counsel sought leave to withdraw from further representation of Plaintiff, (Docket Entry ("DE") [61]), which was granted on December 27, 2021. (Order of Wicks, M.J., dated Dec. 27, 2021.) New counsel filed a notice of appearance on behalf of Plaintiff on December 30, 2021. (DE [62], [63].) On February 4, 2022, Plaintiff's new counsel also sought leave to withdraw as counsel. (DE [71].) That motion was granted on March 9, 2022, and Plaintiff has proceeded pro se since that time. (Order of Shields, M.J., dated Mar. 9, 2022.)

Plaintiff's Complaint contains nine causes of action, all of which Defendants seek summary judgment on: three causes of action for gender discrimination, pursuant to Title VII, 42 U.S.C. § 1983 ("Section 1983"), and the New York State Human Rights Law ("NYSHRL"); three causes of action for hostile work environment, pursuant to Title VII, Section 1983 and the NYSHRL; and three causes of action for retaliation, pursuant to Title VII, Section 1983, and the NYSHRL. The Title VII claims are brought solely against the UCS, while the Section 1983 and

3

NYSHRL claims are brought against Defendants Thomas Adams ("Adams"), Bruno, Diane Toscano ("Toscano"), and Kathryn Driscoll Hopkins ("Hopkins"). Defendants seek summary judgment with respect to all of Plaintiff's claims. The Court now turns to the merits of Defendants' motion.

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

Generally, submissions by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and

4

quotation marks omitted). However, where, as here, the pro se plaintiff is an attorney, she is "not entitled to the special solicitude usually granted to pro se litigants." Aris v. New York Guard, No. 1:22-cv-05019, 2023 WL 5003581, at *2 (S.D.N.Y. Aug. 4, 2023) (quoting Zappin v. Schorr, No. 22-cv-2034, 2023 WL 2601578, at *8 (S.D.N.Y. Mar. 22, 2023); see also Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing [herself] ordinarily receives no such solicitude at all."). The Court's review of the New York Unified Court System's website reveals that Plaintiff is a currently registered practicing attorney in the state of New York, with a business address listed in Hempstead, New York. Accordingly, Plaintiff is not entitled to the usual latitude afforded to pro se parties.

II.   Plaintiff's Retaliation Claims

As a threshold matter, the Court notes that Plaintiff wholly fails to oppose Defendants' motion with respect to her retaliation claims. Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Maher v. Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) (quotation omitted); Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned . . . ."). Since Defendants moved for summary judgment with respect to all of Plaintiff's retaliation claims, and Plaintiff failed to address the claims whatsoever in her opposition, this Court recommends that Plaintiff's retaliation claims be deemed abandoned and that Defendants be granted summary judgment with respect to those claims.

III.     Claims Against Defendant Bruno

As stated above, Defendant Bruno died on November 1, 2019, during the pendency of this action. Pursuant to Federal Rule of Civil Procedure 25(a)(1), Defendants' counsel filed a Suggestion of Death upon the record as to Bruno on January 28, 2020. (DE [36].) On January 29, 2020, then-assigned Magistrate Judge Tomlinson directed Plaintiff to move to substitute Defendant Bruno within ninety days, warning that failure to do so would result in all claims against him being dismissed. (Order of Tomlinson, M.J., dated Jan. 29, 2020.) To date, however, no party has been substituted for Bruno in this action.

Pursuant to Federal Rule of Civil Procedure 25(a), "[a] motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1); see also Buckley v. Bassett, No. 22-cv-01436, 2024 WL 896880, at *16 (E.D.N.Y. Mar. 1, 2024). "A court may extend the deadline to file a motion to substitute if good cause is shown pursuant to Rule 6(b)." Gass v. Target, No. 22-CV-01152, 2023 WL 2919414, at *3 (E.D.N.Y. Mar. 24, 2023) (citing Fed. R. Civ. P. 25(a)(1)).

Following the filing of the Suggestion of Death on January 28, 2020, Plaintiff – still represented by counsel at the time – filed a motion to substitute or to enlarge the time in which to file a motion to substitute on April 28, 2020. (DE [39].) The parties thereafter agreed to extend the time to file a motion to substitute and filed a stipulation extending the time to substitute until thirty days after the appointment of an administrator or executor of Bruno's estate. (DE [41].) Magistrate Judge Tomlinson So Ordered the parties' stipulation on May 11, 2020. (Order of Tomlinson, M.J., dated May 11, 2020.)

6

Thereafter, Plaintiff – still represented by counsel – filed and either withdrew or moved to stay two subsequent motions to substitute. (DE [48], [49], [55], [57], [58], [60].) Plaintiff's third attempt at moving to substitute Bruno was denied as moot, with leave to renew upon appearance of new counsel. (Order of Wicks, M.J., dated Dec. 27, 2021.) New counsel appeared for Plaintiff on December 30, 2021; yet, no additional motion to substitute was made before counsel's motion to withdraw was granted in March 2022.

Since March 2022, Plaintiff has prosecuted this action pro se. As noted above, while Plaintiff is appearing pro se, she is a licensed and practicing attorney. Moreover, she is a former law clerk who should be more than aware of the requirement to substitute a party when that party dies. This Court afforded Plaintiff multiple extensions of time to obtain new counsel; however, no new counsel has appeared on Plaintiff's behalf. In response to Defendants' motion, Plaintiff argues that she has attempted in good faith to substitute Bruno but that she was "thwarted by procedural mishaps caused by her former counsel." (Pl. Mem. of Law in Opp'n 5.) Yet, such an argument fails to explain why Plaintiff has failed to make a motion to substitute in the last two years that she has been proceeding pro se. More than four years have elapsed since a Suggestion of Death was filed on the record with respect to Defendant Bruno. With no party ever having been substituted in Bruno's place, Rule 25(a)(1) mandates the dismissal of all claims against Bruno. See Fed. R. Civ. P. 25(a)(1) (stating that if the motion to substitute "is not made within 90 days after service of a statement noting the death," the action "must be dismissed"). Accordingly, this Court respectfully recommends that all claims against Defendant Bruno be dismissed.

IV.     Plaintiff's Remaining Title VII Claims

Having deemed Plaintiff's retaliation claims abandoned, her remaining claims brought pursuant to Title VII are for gender discrimination and hostile work environment. Such claims are alleged solely against Defendant UCS.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it unlawful for an employer to discriminate against an employee on the basis of sex. 42 U.S.C. § 2000e-2(a). Specifically excluded from the definition of "employee," however, is "[a]ny person elected to public office in any state or political subdivision of any State by the qualified voters thereof," and "any person chosen by such officer to be on such officer's personal staff . . . ." 42 U.S.C. § 2000e(f). "[W]hether a party falls within this exemption is a question of federal law." Davis v. Town of Hempstead, No. 14-CV-903, 2019 WL 235644, at *6 (E.D.N.Y. Jan. 16, 2019) (citing Bland v. New York, 263 F. Supp. 2d 526, 536 (E.D.N.Y. 2003)).

It is undisputed here that Bruno was an elected official. Under New York law, a supreme court justice "may appoint and at pleasure remove one law clerk and one secretary . . . ." N.Y. Jud. Law § 36(1); see also Bland, 263 F. Supp. 2d at 537. Bruno chose Plaintiff to be his law clerk in 2010 and determined virtually all aspects of her employment. She worked in chambers with Bruno and reported directly to him as her supervisor. While, as Plaintiff argues, UCS ultimately paid her benefits and her salary, "the fact that [P]laintiff was not on [Bruno's] personal payroll and that he did not control her pay or benefits does not necessarily lead to the conclusion that she was not on his 'personal staff.'" Bland, 263 F. Supp. 2d at 543-44 (citation omitted). "If it did, then any elected official's personal staff member, chosen by that official, serving at his pleasure, whose salary and employment nonetheless ultimately stemmed from a governmental authority could fall outside the exemption," which would "effectively eradicate

8

this entire category of exemption, since few elected official's personal staff members are wholly administered and paid for personally." Id. at 544 (emphasis in original).

Based on the foregoing, this Court finds that Plaintiff falls within the personal staff exemption of Title VII. Accordingly, it is respectfully recommended that Defendants be granted summary judgment with respect to Plaintiff's remaining Title VII claims.

V.    Plaintiff's Remaining Section 1983 Claims

As with Plaintiff's Title VII claims, her retaliation claims brought pursuant to Section 1983 have been deemed abandoned. Thus, the only claims remaining under Section 1983 are for gender discrimination and hostile work environment. Such claims are alleged solely against the remaining individual defendants, Adams, Toscano and Hopkins.

To recover under Section 1983 against an individual defendant, a plaintiff must establish "the personal involvement of the defendant in the alleged constitutional deprivation." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); see also Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."). "Without evidence supporting a [d]efendant's personal involvement, [a] motion[] for summary judgment on the [Section] 1983 claims must be granted." Burris v. Nassau County District Attorney, No. 14-CV-5540, 2024 WL 1345296, at *7 (E.D.N.Y. Mar. 30., 2024) (quoting Universal Calvary Church v. City of New York, No. 96-CV-4606, 2000 WL 1538019, at *16 (S.D.N.Y. Oct. 17, 2000)) (additional citation omitted).

9

Defendants seek summary judgment on the ground that Plaintiff has failed to establish the personal involvement of Adams, Toscano or Hopkins in the alleged discriminatory conduct. As a threshold matter, Plaintiff fails to address Defendants' arguments on this ground in her opposition to the within motion. Notwithstanding, the Court has rigorously examined the documents submitted by Plaintiff in connection with the within motion and finds that Plaintiff wholly fails to present any evidence of personal involvement by Adams, Toscano or Hopkins.

With respect to Adams, who was the Administrate Judge at the time of Plaintiff's employment, the only evidence before the Court is a letter Plaintiff sent him on September 7, 2016 – following her termination – on which Hopkins and Lamanna are also copied, in which she complains that Bruno terminated her because of her pregnancy. (Moriates Decl., Ex. D.) The letter does not mention gender discrimination or hostile work environment. Moreover, Plaintiff specifically testified at her deposition that prior to her termination, she never discussed any of her allegations of discrimination with any UCS employees. (Moriates Dep. 15.) She further testified that her only communication with Adams was the September 7, 2016 letter, to which she received no response. (Id. 19-20.)

While Plaintiff did have some communications with Hopkins, the Chief Clerk of the Court during her employment, such communications involved requesting a new parking spot because she believed Bruno's wife was "stalking" her, (Moriates Dep. 21-22), and requesting to work from home due to stress that was causing complications with her pregnancy. (Id. 22-23, 129-30.) Plaintiff testified that she never advised Hopkins of her complaints concerning Bruno; nor did she mention gender discrimination or hostile work environment. (Id. 15, 23, 130.)

With respect to Toscano, who was employed as Bruno's courtroom clerk for the first couple of years of Plaintiff's employment, Plaintiff testified during her deposition to a couple of

10

instances in which she felt Toscano was engaging in inappropriate workplace conduct, such as having a mug with sexual comments on it, stating that Bruno was handsome, and leaving an excerpt from a pornographic novel lying around. (Id. 28-29.) Such isolated, episodic events do not rise to the level of a hostile work environment. See, e.g., Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir. 2015) ("To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."); Joseph v. HDMJ Rest., 970 F. Supp. 2d 131, 145 (E.D.N.Y. 2013) ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). As with Adams and Hopkins, Plaintiff never advised Toscano of her complaints of gender discrimination or hostile work environment. (Id. 26.)

Based on the foregoing, Plaintiff has failed to sufficiently establish the personal involvement of Defendants Adams, Toscano and Hopkins to defeat summary judgment. Accordingly, this Court respectfully recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's remaining Section 1983 claims.

V.      Plaintiff's NYSHRL Claims

Having found that Defendants are entitled to summary judgment on all of Plaintiff's federal claims, there remains no independent basis for federal jurisdiction. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law

11

claims pursuant to the NYSHRL, see 28 U.S.C. § 1367(a), this Court recommends that the District Court decline to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, this Court respectfully recommends that Plaintiff's state law claims be dismissed without prejudice.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment be granted and that Defendants be granted judgment as a matter of law with respect to all of Plaintiff's federal claims. The Court further recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that those claims be dismissed, without prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to the Pro Se Plaintiff and Defendants' counsel via ECF.  Defendants' counsel is also directed to serve a copy of this Report and Recommendation on the Pro Se Plaintiff, and to file proof of service on the docket sheet, within three days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the

district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated: Central Islip, New York
May 13, 2024

/s/     Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge